UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GALVIN DUDLEY,

            *Plaintiff*,　　　　　　　　　　　　　　**16 CV 7059**

    *v.*

CITY OF NEW YORK DEPARTMENT OF PARKS AND　　**COMPLAINT**
RECREATION *and* CITY OF NEW YORK,

            *Defendants*.

------------------------------------------------------------------------x

    Plaintiff Galvin Dudley, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant City of New York Department of Parks and Recreation and Defendant City of New York as follows:

**PRELIMINARY STATEMENT**

    1.    Plaintiff Galvin Dudley ("Plaintiff" or "Mr. Dudley") seeks damages and costs against Defendant City of New York Department of Parks and Recreation ("NYC Parks") and Defendant City of New York (the "City") (hereinafter all defendants are collectively referred to as "Defendants") for discriminating against him based on his race (Black) by subjecting him to a hostile work environment and retaliating against him for his complaints of discrimination by, among other things, suspending his employment without pay. Defendant's conduct violates Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified at 42 U.S.C. §2000e to 2000e-17, § 1981 of the Civil Rights Act of 1866 ("§ 1981"), as codified at 42 U.S.C. §1981, and the New York City Human Rights Law ("NYCHRL"), as codified at N.Y. Admin. Code §8-101 to 8-131.

1

## JURISDICTION AND VENUE

2.  Pursuant to 28 U.S.C. §1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII and § 1981.

3.  Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's claims arising under the NYCHRL, as the federal claims arise from the same set of operative facts as the local claims and form part of the same case or controversy.

4.  Pursuant to 28 U.S.C. §1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5.  All conditions precedent to maintaining this action have been fulfilled.  A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a Right-to-Sue Letter dated August 22, 2016, relating to the discriminatory acts described in this Complaint.  This action was properly instituted within ninety (90) days of the issuance of the Right-to-Sue Letter.

## TRIAL BY JURY

6.  Plaintiff respectfully requests a trial before a jury.

## PARTIES

7.  Plaintiff, at all times relevant hereto, was and is a resident of Kings County in the State of New York.

8.  Upon information and belief, at all times relevant hereto, NYC Parks was and is a mayoral agency of the New York City local government with its headquarters located at Arsenal North, 830 Fifth Avenue, New York, NY 10065.

9. Upon information and belief, at all times relevant hereto, the City of New York was and is a municipal corporation duly organized and existing under the constitution and laws of the State and City of New York.

## STATEMENT OF FACTS

10. On or around June 17, 2013, Defendants hired Mr. Dudley as a City Seasonal Aide ("CSA") for NYC Parks.

11. CSAs work approximately from Memorial Day to Labor Day.

12. As a CSA, Mr. Dudley was not assigned to any particular district, but worked at McCarren Park Pool (Summer 2013) and the Commodore Barry Club of Brooklyn (Summer 2014), as directed by Defendants.

13. Mr. Dudley was a reliable employee who consistently fulfilled his job responsibilities.

14. On or around September 22, 2014, Defendants hired Mr. Dudley as a City Park Worker ("CPW"), due to his outstanding recommendations, evaluations, and interview.

15. Upon becoming a CPW, Mr. Dudley became a permanent employee of Defendants.

16. From his hire until approximately December 2014, Mr. Dudley worked at Lincoln Terrace Park in Brooklyn for training.

17. In and around December 2014, Mr. Dudley was assigned to District 19 in Brooklyn (now merged with District 14), which was managed by Stephanie Thayer.

18. Ms. Thayer openly and frequently discriminated against Mr. Dudley based on his race.

19. Ms. Thayer often made derogatory comments to Mr. Dudley about his race.

20. For example, in or around January 2015, Ms. Thayer requested that Mr. Dudley change his schedule, which would have prevented him from attending court-ordered parenting classes and seeing his psychiatrist.

21. Ms. Thayer demanded that Mr. Dudley provide documentation from both his psychiatrist and the parenting class showing that he was obligated to attend.

22. Mr. Dudley promptly did so.

23. Upon receipt of the documents, Ms. Thayer scoffed and told Mr. Dudley, "I can't accept this. You people know how to forge letters. Aren't you people good at forging letters?"

24. Mr. Dudley asked Ms. Thayer if she meant "nigger" when she said "you people."

25. Ms. Thayer responded, "Do I need to repeat myself?"

26. Mr. Dudley again asked, "So you're calling me a nigger?"

27. Ms. Thayer did not deny her intent to direct racial epithets at Mr. Dudley.

28. An Associate Park Service Worker, Miguel Polioli, heard Ms. Thayer and asked Mr. Dudley to take a walk with him.

29. Mr. Dudley reported the incident to Charlie Gilly and Jeff Sickadell, Ms. Thayer's supervisors.

30. From then on, Ms. Thayer began a campaign of retaliation, which included employees of Defendants who were loyal to Ms. Thayer.

31. Ms. Thayer began to address Mr. Dudley only in the plural, as "you people" or "you guys." She refused to call him by his name.

32. Ms. Thayer gave Mr. Dudley the worst possible assignments.

33. For example, Ms. Thayer assigned Mr. Dudley to dig through a trashcan of feces to empty it by hand.

34. Ms. Thayer directed Mr. Dudley to drive the garbage truck and collect garbage for both District 14 and District 19 in a single eight (8)-hour shift, yet the District 19 route alone took, at minimum, a full eight (8) hours to complete.

35. Again, Mr. Dudley complained to Mr. Gilly about Ms. Thayer's discriminatory and retaliatory behavior.

36. However, nothing changed for Mr. Dudley; Ms. Thayer was still Mr. Dudley's manager, and she continued to retaliate against him.

37. Around this time, Ms. Thayer stopped assigning Mr. Dudley duties on the common "duties" board, isolating him from the rest of the CPWs and giving the impression that Mr. Dudley was not working.

38. Whereas other employees were provided with detailed work schedules in advance of their scheduled shifts, Ms. Thayer informed Mr. Dudley that he alone would work on a "need-to-know" basis, i.e. she would assign him tasks at the beginning of each day.

39. This made it nearly impossible for Mr. Dudley to predict his schedule, impacting his ability to care for his family.

40. Defendants refused Mr. Dudley's repeated requests to receive a regular work schedule like those provided to other employees and offered no explanation for the differential treatment.

41. Around this time, Trinnette Jamison, another CPW whom Ms. Thayer promoted to Crew Chief, began provoking arguments with Mr. Dudley.

42. Ms. Jamison called Mr. Dudley a "bitch-ass snitch" due to his complaints about Ms. Thayer's conduct.

43. On one occasion, Daryl Adams, Ms. Jamison's boyfriend, called Mr. Dudley a "bitch-ass nigger" and put his hands near his face, in a fighting position.

44. Mr. Dudley did not respond to Mr. Adams' attempt to incite an altercation and walked away.

45. The next day, Ms. Thayer terminated Mr. Dudley's employment, ostensibly for starting a fight, even though Mr. Adams had provoked Mr. Dudley and Mr. Dudley had walked away from the attempted altercation.

46. The next day, Mr. Dudley was rehired.

47. In or around August 2015, Ms. Thayer requested that Mr. Dudley's probationary period be extended for the maximum amount of time (six (6) months), ostensibly because Mr. Dudley had been "AWOL" and had had an Operations and Management Planning ("OMP") failure[1] in July 2015 at DiGilio Park.

48. Prior to August 15, 2015, Mr. Dudley had not received any complaints, write-ups, or discipline regarding his attendance, because he had no attendance issues. The "AWOL" incident was entirely contrived by Ms. Thayer in retaliation for Mr. Dudley's complaints about her race discrimination.

49. Mr. Dudley had only worked at DiGilio Park for one (1) week prior to the purported OMP failure. Moreover, during that week, Mr. Dudley had complained that there was improper equipment to clean the park to Raul Baez, Mr. Dudley's supervisor, and Shakira Thompson, Mr. Baez's supervisor.

50. Ms. Thayer handed Mr. Dudley the extension request and, for the first time, informed Mr. Dudley of the OMP failure at DiGilio.

---

[1] An OMP failure refers to, among other things, a failure to keep a park free from litter and graffiti.

6

51.     Upon giving Mr. Dudley the extension request, Ms. Thayer said to Mr. Dudley, "Don't you people know how to clean? Weren't you people taught how to clean?"

52.     Mr. Baez told Ms. Thayer that it was inappropriate to continue using the phrase "you people," directed solely at Mr. Dudley.

53.     Ms. Thayer said, "I don't care."

54.     Mr. Dudley complained to his union representative about the ongoing discrimination and retaliation.

55.     Mr. Dudley was then transferred to District 10 in Brooklyn.

56.     Mr. Dudley continued to experience race discrimination and retaliation after his transfer to District 10.

57.     Ms. Thayer was the manager of District 10, as well as Districts 14 and 19; Mr. Dudley still ultimately answered to her and, consequently, was still subjected to her discrimination and harassment.

58.     Mr. Dudley's new supervisor (white), known to Mr. Dudley only as "Mr. West," began to discriminate against Mr. Dudley.

59.     For example, Mr. West forced Mr. Dudley to clean up feces, which none of Mr. Dudley's non-Black counterparts were ever required to do.

60.     On November 14, 2015, Mr. Dudley filed a complaint with the Equal Employment Opportunity (EEO) concerning Defendants' race discrimination and harassment.

61.     On November 16, 2015, Mr. Dudley filed a complaint with the New York State Division of Human Rights ("NYSDHR") concerning Defendants' race discrimination and harassment.

62. Shortly afterward, on or around November 23, 2015, Ms. Thayer terminated Mr. Dudley's employment without explanation.

63. The following day, November 24, 2015, Mr. Dudley was rehired.

64. On March 7, 2016, Defendants again fired Mr. Dudley. This time, Defendants falsely claimed that Mr. Dudley had threatened a woman, citing a supposed report from Mr. West.

65. On March 8, 2016, Mr. Dudley filed a second complaint with the NYSDHR regarding Defendants' ongoing discrimination, harassment, and retaliation.

66. On March 10, 2016, Defendants again reinstated his employment.

67. Mr. Dudley was transferred once more, this time to Queens.

68. On July 15, 2016, Defendants indefinitely suspended Mr. Dudley without pay and without explanation.

69. Days later, Mr. Dudley learned that Ms. Jamison alleged that he had assaulted her at Betsy Head Pool in the Brownsville neighborhood of Brooklyn.

70. Mr. Dudley vehemently denied any misconduct.

71. In fact, he explained that he was at the pool waiting to go for a swim when he was harassed by Ms. Jamison as part of her continued retaliation against him for opposing Ms. Thayer's discrimination.

72. During the Parks Advocate's Office's "investigation," the Parks Advocate's Office represented that it had spoken to several disinterested witnesses. However, the Parks Advocate's Office later admitted that it had only spoken to Ms. Jamison.

73. On September 2, 2016, Mr. Dudley was again rehired.

74. As of September 6, 2016, Mr. Dudley is assigned to Flushing Meadows Corona Park Aquatics Center in Queens, New York, as a CPW.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Hostile Work Environment in Violation of Title VII**

75. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 74 with the same force as though separately alleged herein.

76. Title VII prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

77. Defendants discriminated against Plaintiff by treating him less well than non-Black employees and subjecting him to offensive comments that were so severe and pervasive that they altered the terms, conditions, or privileges of his employment.

78. As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

79. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### SECOND CAUSE OF ACTION
**Retaliation in Violation of Title VII**

80. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

81. Title VII prohibits employers from discriminating against an employee because that employee has opposed any employment practice illegal under Title VII.

82. Plaintiff complained to Defendants about an unlawful employment practice, namely, being subjected to discriminatory comments and conduct based on his race.

83. Defendants retaliated against Plaintiff by, *inter alia,* subjecting him to further discrimination and harassment, refusing to address the discriminatory behavior, and indefinitely suspending his employment.

84. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

85. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**THIRD CAUSE OF ACTION**
**Hostile Work Environment in Violation of § 1981**

86. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 85 with the same force as though separately alleged herein.

87. § 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

88. Defendants discriminated against Plaintiff by treating him less well than non-Black employees and subjecting him to offensive, racially motivated comments that were so severe and pervasive that they altered the terms, conditions, or privileges of his employment.

89. As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering.

90. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### FOURTH CAUSE OF ACTION
### Retaliation in Violation of § 1981

91. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

92. § 1981 prohibits employers from discriminating against an employee because that employee has opposed any employment practice illegal under § 1981.

93. Plaintiff complained to Defendants about an unlawful employment practice, namely, being subjected to discriminatory comments and conduct based on his race.

94. Defendants retaliated against Plaintiff by, *inter alia*, subjecting him to further discrimination and harassment, refusing to address the discriminatory behavior, and indefinitely suspending his employment.

95. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

96. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### FIFTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

97. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 96 with the same force as though separately alleged herein.

98. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

99. Defendants discriminated against Plaintiff by treating him less well than non-Black employees and subjecting him to offensive, racially motivated comments that were so severe and pervasive that they altered the terms, conditions, or privileges of his employment.

100. As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering.

101. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

102. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 101 with the same force as though separately alleged herein.

103. The NYCHRL prohibits employers from discriminating against an employee because that employee has opposed any employment practice illegal under the NYCHRL.

104. Plaintiff complained to Defendants about an unlawful employment practice, namely, being subjected to discriminatory comments and conduct based on his race.

105. Defendants retaliated against Plaintiff by, *inter alia*, subjecting him to further discrimination and harassment, refusing to address the discriminatory behavior, and indefinitely suspending his employment.

106. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

107. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, damages to be determined at trial;

B. For the second claim, damages to be determined at trial;

C. For the third claim, damages to be determined at trial;

D. For the fourth claim, damages to be determined at trial;

E. For the fifth claim, damages to be determined at trial;

F. For the sixth claim, damages to be determined at trial; and

G. An award of compensatory, assumed, and punitive damages;

H. Pre-judgment and post-judgment interest;

I. Attorneys' fees and costs; and

J. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 9, 2016

By: *[signature]*

Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com
*Attorneys for Plaintiff*